# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LORI L. WISE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: **4:09-CV-2192-RDP** |
| } | |
| **MICHAEL J. ASTRUE, Commissioner** } | |
| **of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Lori L. Wise brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), seeking judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.     Proceedings Below**

Plaintiff filed her application for DIB on January 18, 2007 (Tr. 108), alleging a disability onset date of June 12, 2006. (*Id.*). Plaintiff's claim was denied initially and she then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 44-49, 56). Plaintiff's case was heard by ALJ Debra Goldstein on March 4, 2009. (Tr. 28-43). In her April 22, 2009 decision, the ALJ determined that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2011. (Tr. 9, 90-97). The ALJ also determined that Plaintiff suffers from the following severe impairments: diabetic neuropathy, multinodular thyroid, asthma,

temporomandibular joint disorder, obesity, and hypertension. (Tr. 11). However, the ALJ made a further determination that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 404.1525 and 404.1526). (Tr. 13). Plaintiff filed a request for review of the ALJ's decision on April 23, 2009. (Tr. 5). The Appeals Council denied Plaintiff's request for review of the hearing decision on August 27, 2009 (Tr. 1-3), thereby making the Commissioner's final decision subject to judicial review under 42 U.S.C. § 405(g).

At the time of the hearing in question, Plaintiff was a 46-year old woman who went through high school and one year of college. (Tr. 32). Plaintiff received her LPN license and worked as a licensed practical nurse from October 1984 to April 2006. (Tr. 99). Plaintiff testified that she quit work in 2006 because she could no longer endure the standing, walking, and pulling on the patients during a 12-hour shift. (Tr. 39).

In her disability report, Plaintiff alleges that she suffers from diabetes and diabetic related complications, asthma, hypertension, obesity, bilateral cataracts, hyperthyroidism, degenerative spurring in the left hip, and lower back pain. (Tr. 120). Plaintiff listed her medications as: Humulin N and R for diabetes; Lyrica for diabetic neuropathy; Singulair for asthma; Synthyroid for hypothyroidism; and Tramadol for pain in her lower back and legs. (Tr. 125). During the hearing, Plaintiff alleged disability due to neuropathy in the upper and lower extremities, weakness in the upper extremities, bilateral retinopathy, thyroid disorder, asthma, and temporomandibular joint disorder. (Tr. 34-36). Plaintiff complains that she suffers from such severe pain that she is "unable to sit, stand, or walk for any length of time." (Tr. 34). According to Plaintiff, due to these problems she has been unable to engage in substantial gainful activity since May 1, 1999. (Tr. 34). On appeal,

Plaintiff's arguments are focused on the ALJ's findings regarding polyneuropathy in diabetes ("PID").

Plaintiff's medical reports indicate a history of treatment for diabetes dating back to 1992. (Tr. 340). Dr. Jerry R. Robinson, Plaintiff's treating physician, met with Plaintiff for various reasons from January 2007 to December 2008. (Tr. 243-46, 275-306, 354-63). During her initial visit with Dr. Robinson on January 17, 2007, Plaintiff was diagnosed with PID, diabetes with unspecified complication type II or unspecified type not stated as uncontrolled, asthma unspecified, unspecified acquired hypothyroidism, and pain in limb. (Tr. 245-46). PID remained a listed diagnosis of Plaintiff's during the next four visits. However, Plaintiff's PID diagnosis was removed on June 7, 2007 (Tr. 243-46, 275-307, 354-59), and was noted only one other time in a report dated July 18, 2007. (Tr. 281-82). Additionally, in a summary report printed June 9, 2008, which lists Plaintiff's problems, medications, and allergies as found by Dr. Robinson, Plaintiff's PID was listed as "Active." (Tr. 271).

Dr. Robinson referred Plaintiff to Dr. Steven Cowart who Plaintiff first visited on June 10, 2008. (Tr. 340-42). During her initial visit with Dr. Cowart, Plaintiff stated that she was not active due to her PID and complained that she had persistent nausea because of her medication. (*Id*.). Plaintiff also admitted to Dr. Cowart that she monitored her diabetes only infrequently. (*Id*.). By December 2008, Dr. Cowart noted considerable improvement in Plaintiff's glycemic control as she was not experiencing hypoglycemia after lunch and was monitoring her diabetes four times daily. (Tr. 334-35). Dr. Cowart changed Plaintiff's diagnosis to diabetes type II with neurological manifestations, now controlled, and referred Plaintiff to a neurologist, Dr. Tejanand G. Mulpar, in

3

order to assess Plaintiff's neuropathic pain in her lower extremities. (*Id*.). Dr. Coward provided Plaintiff with a limited number of Lortab to take daily, presumably for pain. (*Id*.).

Plaintiff first visited Dr. Mulpar on January 21, 2009, with a single complaint of numbness and tingling in both lower extremities. (Tr. 345-49). Plaintiff described the onset of her symptoms as gradual and getting progressively worse. (*Id*.). She described that she initially experienced numbness from her knees down, but that later the numbness spread to her outer thighs. (*Id*.). She also told Dr. Mulpar that she had no significant symptoms in her upper extremities. (*Id.*). Dr. Mulpar noted that Plaintiff walked with normal base and stride, that she was able to tandem walk, and walk on her heels and toes. (*Id.*). Dr. Mulpar performed an EMG nerve conductive study on Plaintiff and concluded that there was no electrophysiological evidence of a large fiber peripheral polyneuropathy of lumbrosacral plexopathy at that time. (*Id.*). He suspected small fiber neuropathy and continued Plaintiff on Neurontin for her pain. (Tr. 345-49).

Plaintiff testified that she started experiencing problems in her hands in the middle of 2008 and that Dr. Mulpar was her treating physician. (Tr. 35). However, Dr. Mulpar's records do not detail any complaints of pain in Plaintiff's upper extremities.

## II. ALJ Decision

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC")

can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 12, 2006, her alleged onset date of disability and that she met the insured status requirements for DIB through December 31, 2011. (Tr. 11). The ALJ concluded that Plaintiff suffers from the following severe impairments: diabetic neuropathy, multinodular thyroid, asthma, temporomandibular joint disorder, obesity, and hypertension. (Tr. 11). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of impairments required in order to be found disabled. (20 C.F.R. §§ 404.1525, 404.1526). (Tr. 13). The ALJ also determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the exception that she cannot work around chemicals and dust, must not

be required to stoop or bend, and must have an option to sit up to six hours in an eight hour day with an option to sit and stand for up to eight hours. (Tr. 14).

According to the ALJ, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with her RFC assessment. (Tr. 15). In placing great weight on the objective evidence provided by the treating physicians, the ALJ did not find evidence showing that Plaintiff suffers from more than mild to moderate pain. (Tr. 17). The ALJ concluded Plaintiff is not disabled under Sections 216(i) and 223(d) of the Act. (Tr. 20).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Br. 9). Plaintiff argues (1) the ALJ's credibility determination of her testimony was not supported by substantial evidence, and (2) the ALJ improperly failed to fully and fairly develop the record. (*Id.*).

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court concludes that the ALJ's findings are supported by substantial evidence and that she applied the proper legal standards.

### A.     The ALJ's Credibility Finding Regarding Plaintiff's Testimony Is Supported by Substantial Evidence.

Plaintiff argues that the ALJ's findings as to her credibility are not supported by substantial evidence. (Pl.'s Br. 6). The ALJ determined that on June 7, 2007, during Plaintiff's fourth visit to Dr. Robinson, her diagnosis of PID was removed from his reports. (Tr. 16). Plaintiff asserts that the ALJ improperly determined that because polyneuropathy was 'removed' from her diagnosis list

7

for a period of time her symptoms dissipated. (Pl.'s Br. 7). Plaintiff points to Dr. Robinson's report of July 18, 2007, where a diagnosis of PID is listed. (Pl.'s Br. 6; Tr. 281-82). Additionally, Plaintiff points out that Dr. Robinson's summary of her problems as listed on June 9, 2008, shows the status of her PID as "active." (Pl.'s Br. 6; Tr. 271). Lastly, Plaintiff argues that the ALJ's finding ignores the evidence from Dr. Cowart. (Pl's Br. 8). A review of the ALJ's decision, however, shows that substantial evidence supports the ALJ's RFC conclusions.

In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective complaints of pain by applying the pain standard. The standard for subjective complaints of pain or other symptoms requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although such evidence itself is sufficient for a finding of disability, the ALJ may elect to discredit a claimant's subjective complaints. *See id.* And, should the ALJ discredit the claimant's subjective description of her condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Such a finding does not require the use of thaumaturgic phrases; all that is required is a clearly supported credibility determination. *See id.* However, should the ALJ explicitly discredit the testimony, he must articulate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). "The court will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

Plaintiff correctly asserts that, after claiming that the diagnosis of PID was removed on June 7, 2007, the ALJ missed Dr. Robinson's diagnosis of PID on July 18, 2007. However, the ALJ did discuss that particular visit finding that, "[o]n that occasion the [Plaintiff] complained of right shoulder pain which was treated by an injection in her right shoulder and apparently resolved." (Tr. 16, 281). Even after recognizing the additional July 2007 diagnosis, PID was listed as a condition only five times out of a total nineteen visits. Plaintiff visited Dr. Robinson for twenty-four months, and after the first six months PID was no longer listed as a diagnosis.

Plaintiff also correctly notes that Dr. Robinson's list summarizing her conditions, printed June 9, 2008, includes PID with the status of "Active." (Tr. 271). To be sure, the summary report lists twenty-two problems–all with the status of "Active." (*Id.*). Among others, the list includes acute sinusitis and throat pain with an onset date of June 7, 2007, as well as an ingrown toenail with an onset date of December 12, 2007. (*Id.*). Because it is unreasonable to believe that Plaintiff had been suffering from sinusitis and throat pain an entire year, or an ingrown toenail for six months, and because Plaintiff does not even allege that she currently suffers from twenty-two different problems, the ALJ could conclude that the summary report was not credible in relation to determining Plaintiff's current problems.

Plaintiff's claim that "the ALJ's finding ignores the evidence from Dr. Cowart" is also off the mark. (Pl.'s Br. 6). The ALJ clearly evaluated Plaintiff's visits with Dr. Cowart starting in the second, full paragraph on page 8 of her decision. (Tr. 16). The ALJ addressed Dr. Cowart's initial reports with Plaintiff, as well as reports from their ongoing visits which note signs of improvement. (*Id.*). Dr. Cowart referred Plaintiff to Dr. Mulpar in 2009, and Dr. Mulpar's reports were also acknowledged by the ALJ. In making her finding, the ALJ stated that she placed "great weight in

9

the objective evidence provided by [Plaintiff's] treating physicians....; her endocrinologist, Dr. Cowart,...." (Tr. 17).

Plaintiff testified that she is unable to sit, stand, or walk for any length of time because of the PID in her hips, thighs, legs, and feet. (Tr. 34). Plaintiff described the pain by saying, "I burn, I feel like I'm sitting on knives or walking on knives." (*Id.*). Of all the examinations, the highest recorded level of pain that Plaintiff described for her lower extremity symptoms was moderate. Though Plaintiff points out two documents that might suggest ongoing issues with PID, they are not sufficiently substantial to constitute grounds for reversal. After careful consideration of the entire record, the court concludes that ALJ properly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (Tr. 15).

### B. The ALJ Fully and Fairly Developed the Record and Gave Proper Credit to Plaintiff's Longitudinal Medical Record.

Plaintiff claims that the ALJ erred in evaluating her longitudinal medical record. Plaintiff alleges that the medical records reveal a longitudinal history of diabetes with complications and treatment for the same. More specifically, Plaintiff cites seven doctors' reports including her first two visits to Dr. Robinson (on January 27, February 20, 2007), all four visits with Dr. Cowart (on June 10, in July, September, on December 30, 2008), and her only visit to Dr. Mulpar (January 21, 2009). (Pl.'s Br. 7-8).

The ALJ has a basic duty to fully and fairly develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982); *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). "In general, a longitudinal medical record demonstrating an individual's attempts to seek

medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individuals's statements." *See* SSR 96-7P 1996 WL 374186 at 7.

As Defendant correctly notes in its brief, "Plaintiff's argument fails because those longitudinal records do not bolster her subjective complaints of pain, but instead undermine them." (Def. Br. 9). A review of the medical records reveals limited use of narcotic pain medication for her neuropathy and successful treatment of her diabetes. Having only cited the first two of many examinations with her treating physician, Dr. Robinson, Plaintiff's claim that the ALJ erred in giving credit to her longitudinal medical record is without merit. (Tr. 243-46, 275-307, 354-63). After her initial complaints and diagnosis, fourteen other of her visits fail to illustrate disabling pain. (Tr. 275-307, 354-63). At her last two visits with Dr. Cowart on record, Plaintiff's type II diabetes (with neurological manifestations) was determined to be controlled, her glycemic control was greatly improved, and she was monitoring her condition four times daily. (Tr. 334, 336). In previous examinations, Dr. Cowart had noted that Plaintiff's diabetes was uncontrolled and that she monitored her diabetes infrequently. (Tr. 338, 340). Plaintiff received a limited number of Lortab 5mg at her final visit with Dr. Cowart in December 2008. (Tr. 335). Based on the nerve conduction study and his examination of Plaintiff in January 2009, Dr. Mulpar recommended that Plaintiff continue taking Neurontin, but did not prescribe any narcotic pain medication. (Tr. 347). The evidence regarding Plaintiff's treatment of pain and diabetes also substantially supports the ALJ's credibility finding. The longitudinal medical record lacks consistent complaints or reports of severe pain. To the contrary, it actually shows progress with treating Plaintiff's symptoms.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___21st___ day of March, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE